UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:16-cv-00044-JHM-HBB

HBR LEWISPORT, LLC d/b/a
HEARTLAND VILLA CENTER                                        PLAINTIFF

v.

PAMELA SUE HAMILTON, as Personal Representative of
The Estate of LIONA TURPIN, deceased                          DEFENDANT

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO ENFORCE ARBITRATION AGREEMENT
AND
PLAINTIFF'S MOTION FOR LIMITED DISCOVERY**

Plaintiff, HBR Lewisport, LLC d/b/a Heartland Villa Center ("Heartland Villa"), hereby submits its Reply Brief in Support of its Motion to Enforce Arbitration Agreement and Enjoin Defendant. In the event that the Court determines that additional information is needed before enforcing the Arbitration Agreement, Plaintiff also requests, as alternative relief, that the Court grant limited discovery as described herein.

**I.  Extensive documentation in the records reflect that Patricia Turpin was a Power of Attorney for Liona Turpin at the time the Arbitration Agreement was executed.**

Upon her mother's admission to Heartland Villa, Patricia Turpin, executed several admissions documents, including the Arbitration Agreement in question. Upon information and belief, at the time of Liona Turpin's admission to Heartland Villa, Patricia Turpin served as Power of Attorney for Liona Turpin.

In her Response Brief, Pamela Hamilton produced an affidavit stating that it is her belief that Patricia Turpin never served as Power of Attorney.[1] However, extensive documentation from

---

[1] Notably, however, Defendant produced no sworn affidavit from Patricia Turpin herself to that effect.

the Heartland Villa records reflects otherwise. For instance, on the same date the Arbitration Agreement was signed, Patricia Turpin also executed the Admission Agreement, which she signed as "Financial POA":

> We hereby acknowledge receipt of a copy of this Agreement on this date, and we agree to comply fully with all of the terms.
>
> Resident/Patient *Signature*       Date       Resident/Representative email
>                                                *Trish Turpin*
> X— *Trish Turpin*                              *Financial POA*         1/27/14
> Designated Representative *Signature*          Name and Title (POA, Guardian, etc.)   Date

(Attached as Exhibit A.) Likewise, on a "Representative Designation" form from the same date, Patricia Turpin signed as "Power of Attorney" and indicated that she had provided "a legal document for financial and/or health care decisions" on January 25, 2014. Patricia Turpin specifically completed the section of the form to be signed by individuals who already had legal documents granting authority to act on a patient's behalf.

> If a Representative will complete admission paperwork on behalf of the resident/patient, please provide the information below. Please complete option **1** or **2**. Complete option **1** if you have a legal document for financial and/or health care decisions <u>and you are providing a copy today</u>. All others please complete option **2**.
>
> *Trish Turpin (Financial)  Pam Hamilton (Healthcare Surr)*
> Representative Name                          Representative Phone Number *Trish: 270-922-163*
> *125 E. Main St. Cloverport, KY. 40111       Daughter*     *Pam: 270-222-*
> Representative Address                        Relationship to Resident/Patient   *0592*
>
> 1. Pursuant to the authority contained in the document(s) listed below, I agree to act as Representative for ___*Fiona Turpin*___ (*Name of Resident/Patient*) and have provided the documents as proof of my authority upon the Resident/Patient's admission to the Center.
>
> Check (✓) which exist, check (✓) whether document applies to financial and/or health care decisions, and indicate when a copy was obtained:
>
> Document Type                        Financial   Health Care   Date Received
> ✓ Power of Attorney                    ✓           ☐            1/25/14
> ✓ Other: *Surrogate / Living Will*    ☐           ✓            1/25/14
>
> *If a copy of the above document which establishes authority to act on the Resident's/ Patient's behalf is not provided with this document <u>do not</u> complete section 1.*
>
> X— *Trish Turpin*    1/27/14           *[signature]*             1/27/14
> Representative Signature    Date        Center Representative Signature   Date

2

(Attached as Exhibit B.) Notably, immediately above her signature in section 1, the document states, "*If a copy of the above document which establishes authority to act on the Resident's/Patient's behalf is not provided with this document <u>do not</u> complete section 1.*" Id. (emphasis in original).

Patricia Turpin also signed as "POA" on another form, which requested beauty services for Liona Turpin:

> Prices are subject to change.
>
> X-Trish Turpin _____ POA or resident's signature
> 1/27/14 _____ Date

(Attached as Exhibit C.) Further notations in the admissions file show that a "Financial POA" was produced to Heartland Villa on January 25, 2014:

| Does the Patient have an Advance Directive(s)? | ☑ YES | ☐ NO | | |
|---|---|---|---|---|
| If YES, (✓) check which exist, and if a copy was obtained: | Document Obtained | | Documents Not Yet Obtained, But Facility was Informed of Document(s) Existence | |
| | Date | Initials | Date | Initials |
| ☐ Advance Directive (Living Will, Declaration or Directives to Physicians) | | | | |
| ☑ Health Care Proxy (Health Care Agent or Surrogate) | 1/25/14 | P | | |
| ☐ Durable Power of Attorney for Health Care | | | | |
| ☐ Court Appointed Guardian - Person | | | | |
| ☐ Court Appointed Guardian - Property | | | | |
| ☑ Other (include POLST, POST, etc., if applicable): Financial POA | 1/25/14 | P | | |
| Resident/Patient wants to proceed further with Social Services? ☐ YES ☑ NO | | | | |

(Attached as Exhibit D.)[2]

The documentary evidence therefore strongly indicates that Patricia Turpin was in fact operating under a Power of Attorney at the time she signed the admission documents. Pamela

---

[2] For the reasons stated in Section VI of this brief, Plaintiff alternatively moves the Court to allow limited discovery regarding the Power of Attorney.

3

Hamilton now seeks to disclaim the representations made by Patricia Turpin about her authority to sign the agreements at the time that she executed the documents. However, Ms. Hamilton has presented no evidence or testimony from Patricia Turpin.

Moreover, even if no Power of Attorney had been in effect at the time of Liona Turpin's admission, as Defendant now claims, Liona Turpin ratified the acts of Patricia Turpin by accepting the benefits of both the Admission Agreement and the Arbitration Agreement, and not revoking the Arbitration Agreement (as she was entitled to do within 30 days), and later executing another Power of Attorney, again affirming Patricia Turpin's authority to arbitrate all matters involving Liona Turpin. (*See* Power of Attorney at p. 3, Section (h), attached to Plaintiff's Motion to Enforce Arbitration Agreement.) *See, e.g., Energy Home v. Peay*, 406 S.W.3d 828 (Ky. 2013) (holding that a person accepting the benefits of a contract assented to the terms and conditions of an Arbitration Agreement).

The Kentucky Supreme Court has affirmed that a "party seeking to avoid [an] arbitration agreement has a *heavy burden*," and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (emphasis added). Defendant has not met this burden. The Arbitration Agreement should therefore be enforced.

In the alternative, should the Court determine that more information is needed regarding the scope of Patricia Turpin's authority to act on behalf of Liona Turpin, Plaintiff requests limited discovery as described in Section VI below.

II. **Federal courts have now held that the recent Kentucky Supreme Court opinions limiting the validity of arbitration agreements violate the Federal Arbitration Act.**

In her response brief, Defendant cites to *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015) for the proposition that a power of attorney document under which an arbitration

4

agreement is entered into must explicitly state that the power of attorney has authority to execute said agreement. However, Defendant fails to mention that a petition for a writ of certiorari regarding *Whisman* has been filed and is currently pending before the Supreme Court of the United States.[3] Defendant further cites to recent case law from this jurisdiction which is expressly critical of the *Whisman* opinion.

Subsequent to *Whisman*, this jurisdiction rendered an opinion in *Preferred Care of Delaware, Inc., v. Crocker,* 2016 U.S. Dist. LEXIS 39140 (W.D. Ky. March 25, 2016) directly addressing the enforceability of an arbitration agreement. Specifically, Judge Thomas Russell considered whether the Kentucky Supreme Court's decision in *Whisman* violates and is therefore preempted by the Federal Arbitration Act ("FAA"). In its interpretation of the FAA, the Court in *Crocker* held that federal law supersedes the rule set forth in *Whisman* because that rule requires courts to single out arbitration agreements for disfavored treatment. *Id.* at *30. Ultimately, the Court in *Crocker* held that an attorney-in-fact with the power to enter into contracts and institute and defend lawsuits has authority to sign a pre-dispute arbitration agreement on behalf of her principal. *Id.* at *37-38.

Specifically, the Court in *Crocker* held that state interpretations of contract law cannot stand if such interpretations run contrary to the FAA. As a federal court interpreting federal law, the rationale and holding in *Crocker* is important in determining the preemptive power of the FAA when a state law or court ruling (even a ruling that is facially based on state contract interpretation) fails to place arbitration agreements on "the same footing as other contracts." *Id.* at *32 ("[T]he Court found that "[b]y enacting §2 [of the FAA], . . . congress precluded States from singling out

---

[3] *See* U.S. Supreme Court docket, attached as Exhibit E (last checked July 25, 2016).

5

arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts.'') (internal citations omitted).

Other federal court decisions in Kentucky have held similarly. On May 12, 2016, in *Owensboro Health Facilities, L.P. v. Henderson*, 2016 U.S. Dist. LEXIS 63276 (W.D. Ky. May 12, 2016), this Court relied upon the reasoning set forth in *Crocker* and declined to apply *Whisman*'s rule regarding the authority required for an attorney-in-fact to enter into an arbitration agreement on behalf of a principal, as such a rule was preempted by the FAA.

In describing the two situations in which the FAA preempts a state law or rule, this Court adopted Judge Russell's reasoning in *Crocker* and held "that Kentucky's requirement that a power of attorney explicitly enumerate an attorney-in-fact's power to sign an arbitration agreement violates the FAA as it fails the second inquiry under *Concepcion*." *Id.* at *10 (quoting *Crocker*, 2016 U.S. Dist. LEXIS 39140 at *9). This Court held that the rule announced in *Whisman* was invalid, as it would have a disproportionate effect on the ability of agents to enter into arbitration agreements as opposed to other contracts. *Id.* at *11-12 (citing *Whisman*, 478 S.W.3d at 354 (Abramson, J., dissenting)).

Likewise, in *Riney v. GGNSC Louisville St. Matthews LLC*, 2016 U.S. Dist. LEXIS 63275 (W.D. Ky. May 12, 2016), the Court *again* adopted the reasoning in *Crocker* and found the rule set forth in *Whisman* to be invalid and preempted by the FAA. In that case, the plaintiff, Golden Living Center, filed a petition in federal court to compel the arbitration of claims asserted against it in Jefferson Circuit Court by the estate of a former resident. Upon the resident's admission to Golden Living Center, his attorney-in-fact, Linda Swenson, executed a voluntary arbitration agreement agreeing to submit claims arising out of the residency to binding arbitration. Like the power of attorney documents in *Crocker* and *Henderson*, the power of attorney document at issue

in *Riney* granted Linda Swenson the authority "to draw, make and sign any and all checks, contracts or agreements; to institute or defend suits concerning my property or rights; and generally to do and perform for me and in my name all that I might do if present." *Id*. at *1-2. Adopting the reasoning in *Crocker*, the court again held that *Whisman* violated the FAA and declined to apply its rule regarding the authority of attorney-in-facts to enter into pre-dispute arbitration agreements. Because that the power of attorney document granted Linda Swenson the authority to sign any and all contracts and to institute suits concerning the resident's property or rights, the arbitration agreement was enforceable. *Id*. at *10-11.

In yet another case, although Judge David Hale ultimately determined that *Whisman* was inapplicable to the specific facts before the Court in *GGNSC Louisville Hillcreek, LLC v. Watkins*, 2016 U.S. Dist. LEXIS 25372 (W.D. Ky. Feb. 29, 2016), he nonetheless noted that "Justice Abramson's dissenting opinion is more consistent with applicable federal law than the majority opinion." *Id*. at *13 n. 3 (citing *Whisman*, 478 S.W.3d at 354 (Abramson, J., dissenting) ("[A]s the United States Supreme Court has made absolutely clear, what state law cannot do directly—disfavor arbitration—it also cannot do indirectly by favoring arbitration's correlative opposite, a judicial trial. Since that is the express purpose of the rule the majority pronounces and since the application of that rule will clearly have a disproportionate effect on the ability of agents to enter arbitration agreements (as opposed to other contracts), the majority's new rule is plainly invalid.")).

**III.** **Liona Turpin was the intended third-party beneficiary of the admissions documents, including the Arbitration Agreement, and was bound to their terms.**

Patricia Turpin signed the Arbitration Agreement "in [her] <u>individual capacity</u> and in [her] capacity as power of attorney, legal guardian or agency authorized to bind Patient to this Agreement." (*See* Arbitration Agreement at Doc. 10 (emphasis added).) Thus, Patricia Turpin did not merely sign the Arbitration Agreement as a representative of Liona Turpin, but she also

signed the Agreement in her own individual capacity.

Although Defendant cited to *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 589 (Ky. 2012), she failed to note that, in that case, the Kentucky Supreme Court expressly recognized the applicability of binding contracts to a third-party beneficiary where "the agent entered the admissions agreement not merely as a purported representative *but also in his or her individual capacity*, and the decedent, and hence the estate, has been deemed bound by the arbitration clause as a third party beneficiary of the contract between the facility and the agent." *Id.* at 597 (internal quotations and citations omitted) (emphasis added).

To illustrate the proper application of the third-party beneficiary rule, the court in *Ping* cited to *Cook v. GGNSC Ripley, LLC*, 786 F. Supp. 2d 1166 (N.D. Miss. 2011), where a nursing home resident's daughter did not have authority to execute an admissions agreement and a separate, optional arbitration agreement on behalf of the resident, but also signed the agreements in her individual capacity. *Id.* at 1169. Because the essential purpose of the agreements was the resident's care, the court found that the resident was bound by the terms of the agreements as a third party beneficiary. *Id.* at 1172.

Under Kentucky law, there is sufficient consideration for a promise if there is "*any* benefit to the promisor or *any* loss or detriment to the promisee." *Van Winkle v. King,* 141 S.W. 46 (Ky. 1911) (emphasis added). The standard is met in the instant case. By entering into the Arbitration Agreement with Patricia Turpin, Heartland Villa agreed to forego filing suit against Liona Turpin for claims the facility may have against her. For example, if either Patricia Turpin or Liona Turpin damaged facility property during Ms. Turpin's residency, the facility's claims against her would be subject to arbitration. Likewise, if Ms. Turpin failed to pay expenses associated with her care not covered by Medicare or a third-party payor (or failed to pay by not applying for or obtaining

8

such benefits at all), the facility's claims would also be subject to arbitration.[4] Because Patricia Turpin also executed the Arbitration Agreement in her individual capacity, she obtained the benefit of resolving such disputes in a private arbitral setting rather than in a public, protracted, and costly lawsuit. *See Whisman*, 478 S.W.3d at 355 (J. Noble, dissenting) (noting that arbitration "is viewed as a faster, less complicated proceeding than going through the fully panoply of rights and procedures attendant to a trial either to the court or to a jury."). Ms. Turpin received a benefit from entering into the Arbitration Agreement with the facility. As such, the Arbitration Agreement between Ms. Turpin and the facility is valid and enforceable.

Because Patricia Turpin also expressly signed the Arbitration Agreement in her individual capacity, a valid agreement existed between Patricia Turpin and the facility for the express purpose of providing care and services to Liona Turpin. As the third-party beneficiary of that agreement, Liona Turpin was also bound to the terms of the Arbitration Agreement. *See Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009) (noting that non-signatories to a contract containing an arbitration agreement are bound to the agreement if the non-signatory received a direct benefit from that contract). The Arbitration Agreement is therefore enforceable in regard to the claims asserted in this case and Defendant should be required to arbitrate her claims in accordance with the Agreement.

### IV. Assertion of a wrongful death claim does not affect the arbitrability of Defendant's claims in the State Court Action.

---

[4] Long-term care facilities may pursue actions against responsible parties with legal access to a resident's income or resources who have agreed to provide payment from those resources pursuant to an agreement signed by the responsible party. *See* 42 CFR § 483.12. Furthermore, Section 2 of the Arbitration Agreement, which Ms. Turpin entered into in her individual capacity, includes "all claims or controversies or controversies arising out of or in any way relating to [the Arbitration] Agreement or the Patient's stay at the Center…." (*See* Arbitration Agreement at 2.)

In her response brief, Defendant contends that this current action is merely "an attempt to prevent Ms. Turpin's estate from pursuing wrongful death claims." However, Defendant's argument is not well-taken. Under any interpretation of *Ping*, Plaintiff's inclusion of a wrongful death claim in the state court action does not affect the arbitrability of all other claims in this matter. In *Kindred Healthcare, Inc. v. Cherolis,* the Kentucky Court of Appeals considered the effect of an arbitration agreement on wrongful death claims, stating:

> [T]he Court in *Ping* drew a distinction between wrongful death claims and personal injury claims. The Court held that, in Kentucky, wrongful death claims are not derivative of personal injury claims. Consequently, <u>the estate may be bound by a valid agreement to arbitrate the *personal injury and negligence claims*</u>.

2013 WL 5583587 *4 (Ky. Ct. App. Oct. 11, 2013) (emphasis added). As such, the Kentucky Court of Appeals found that the language in the power of attorney authorized the agent to execute the arbitration agreement as to the non-wrongful death claims. Therefore, the Court remanded the case to the circuit court for entry of an order granting arbitration of the negligence and personal injury claims involved in the case.

Likewise, in this case, a finding that Defendant's wrongful death claim is not subject to binding arbitration would have no effect on the arbitrability of all of Defendant's other claims asserted against Plaintiff in the state court action. Thus, under any interpretation of Kentucky law and the FAA, the presence of a wrongful death claim does not render the Arbitration Agreement unenforceable. Defendant should be compelled to arbitrate all claims that do fall within the scope of the Arbitration Agreement.

**V.     An injunction related to the enforcement of the Arbitration Agreement does not violate the Anti-Injunction Act.**

In her brief, Defendant claims that an "injunction would violate the Anti-Injunction Act." However, Defendant fails to cite to relevant case law from this jurisdiction on this very point. In

10

the *Watkins* case cited above, Judge David Hale held that an injunction of state proceedings is necessary to protect the final judgment of the district court on the issue of whether to enforce an arbitration agreement. 2016 U.S. Dist. LEXIS 25372 at *16-17. He explained,

> Finally, Watkins argues that the Anti-Injunction Act prevents this Court from enjoining the state court action as a matter of law, and that because this action is to compel arbitration, it should be dismissed. But "a district court's injunction of state-court proceedings after compelling arbitration [does] not violate the Anti—Injunction Act." An injunction when compelling arbitration falls into the "necessary . . . to protect or effectuate [the district court's own] judgments" exception to the Anti-Injunction Act. Indeed, "[a]n injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue." Thus, enjoining Watkins from proceeding against GGNSC in the state court action will not violate the Anti-Injunction Act if the Court grants GGNSC's motion to compel arbitration.

*Id.* (citations omitted). This Court subsequently adopted Judge Hale's reasoning on similar grounds. *See Owensboro Health Facilities, L.P. v. Henderson*, 2016 U.S. Dist. LEXIS 63276 at *5 ("After considering the arguments of the parties and the case law set forth above, the Court denies the motion to dismiss for the reasons set forth by Judge David Hale in *GGNSC Louisville Hillcreek, LLC v. Watkins*.") An injunction related to arbitration in the present matter does not violate the Anti-Injunction Act.

### VI. Alternatively, Plaintiff moves the Court to allow limited discovery as to the enforceability of the Arbitration Agreement.

The evidence presented at this point is sufficient under Kentucky and federal law to grant the enforcement of the Arbitration Agreement. In particular, as described above, because Liona Turpin is a third-party beneficiary of the Arbitration Agreement signed by Patricia Turpin in her individual capacity (in addition to any other capacity), the Arbitration Agreement is valid – regardless of Defendant's argument that Patricia Turpin was not the Power of Attorney at the time of execution. Likewise, even if Liona Turpin had not been a third-party beneficiary to the contract

11

that Patricia Turpin entered into, Liona Turpin would still be bound to the Arbitration Agreement by having accepted the benefits of the Agreement and thus ratifying Patricia Turpin's actions.

However, if the Court finds that further proof is necessary regarding the Power of Attorney document that was in effect at the time the Arbitration Agreement was executed, as referenced multiple times by Patricia Turpin in the admissions documents she signed, then Plaintiff hereby alternatively moves the Court enter an order permitting limited discovery regarding the Power of Attorney documents.

Although the Power of Attorney document in effect in January 2014 is not currently contained in the facility's chart, it is referenced numerous times.  Plaintiff also believes that said document may be in the possession of other medical providers, such as Bishop Soenneker Home, a medical provider for Liona Turpin prior to her admission to Heartland Villa.  Plaintiff has previously requested a HIPAA authorization from Ms. Hamilton's counsel, which would allow Plaintiff to determine whether a copy of said document in the possession of Ms. Turpin's other third party providers.  However, that request has been denied by Ms. Hamilton's attorney.  Limited discovery would allow Plaintiff to seek information about that Power of Attorney and such limited discovery is necessary, if the Court determines that additional information is needed before enforcing the Arbitration Agreement.

### VII.   Conclusion

For the reasons set forth above, Plaintiff requests that the Court grant its Motion to Enforce Arbitration Agreement and Enjoin Defendant.  Alternatively, if the Court finds that the Agreement cannot be enforced on the facts already before the Court, Defendant moves the Court to order limited discovery regarding the sources of Patricia Turpin's authority, including the Power of Attorney in effect at the time that the Arbitration Agreement was signed.

Respectfully submitted,

GWIN STEINMETZ & BAIRD, PLLC

/s/ Michael F. Sutton_____
Michael F. Sutton
msutton@gsblegal.com
David L. Haney
dhaney@gsblegal.com
401 West Main Street, Suite 1000
One Riverfront Plaza
Louisville, Kentucky 40202
Telephone: (502) 618-5700
Facsimile: (502) 618-5701
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 27, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system:

Charles E. Moore
Dion Moorman
Moore, Malone & Safreed
104 East Fourth Street
P.O. Box 549
Owensboro, Kentucky 42302-0549
*Counsel for Defendant*

                                   /s/ Michael F. Sutton
                                   Michael F. Sutton
                                   msutton@gsblegal.com
                                   David L. Haney
                                   dhaney@gsblegal.com
                                   GWIN STEINMETZ & BAIRD, PLLC
                                   401 West Main Street, Suite 1000
                                   One Riverfront Plaza
                                   Louisville, Kentucky 40202
                                   Telephone: (502) 618-5700
                                   Facsimile: (502) 618-5701
                                   *Counsel for Plaintiff*