UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:16-CV-00044-JHM

HBR LEWISPORT, LLC d/b/a                          PLAINTIFF
HEARTLAND VILLA CENTER

v.

PAMELA SUE HAMILTON, as                        DEFENDANT
Personal Representative of the
Estate of LIONA TURPIN, deceased

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff HBR Lewisport, LLC's, doing business as Heartland Villa Center, (hereinafter "Heartland Villa") motions to compel arbitration and enjoin Defendant Pamela Sue Hamilton [DN 8] and for limited discovery [DN 16]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

This matter concerns the validity of an arbitration clause in a contract for nursing home care. Liona Turpin was a resident of Heartland Villa nursing home in Lewisport, Kentucky. She was admitted on January 27, 2014. All of the paperwork regarding her admission was signed by Trish Turpin, her daughter. Trish signed as her attorney in fact, however, Defendant asserts that her mother had not given a power of attorney to her daughter Trish when she signed the arbitration agreement which stated, "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center . . . shall be submitted to binding arbitration." [DN 8-2, at 1].

On September 22, 2014, Liona underwent knee surgery at Owensboro Health Regional Hospital. She was to have the staples that were inserted after the surgery removed on a specific date. However, the medical staff at Heartland Villa did not remove the staples on that date, and an infection in the knee developed. Liona passed away on January 14, 2015. Pamela Sue Hamilton, Liona's daughter and the personal representative of her estate, brought an action against Heartland Villa and other defendants, in Hancock Circuit Court, alleging negligence in the failure to remove the staples from Liona's knee. [DN 1-4]. Heartland Villa then filed this action, seeking enforcement of the arbitration agreement, as well as an injunction against Hamilton pursuing her claims in the state court action. [DN 1]. Heartland Villa subsequently moved this Court to compel arbitration and enjoin Hamilton. [DN 8]. In its reply, Heartland Villa asks the Court in the alternative for limited discovery regarding its prior motion. [DN 16].

## II. DISCUSSION

The power of attorney document pursuant to which Trish signed the arbitration agreement has not been produced yet in this case. That is problematic, as the terms of that document, if it exists, are essential to determining whether Trish was authorized to enter into the arbitration agreement. A power of attorney is a "written, often formally acknowledged, manifestation of [a] principal's intent to enter into [an agency] relationship with a designated agent" to act on the principal's behalf. *Ping v. Beverly Enter., Inc.*, 376 S.W.3d 581, 591 (Ky. 2012). Like most agency relationships, "[t]he scope of that authority is thus left to the principal to declare, and generally that declaration must be express." *Id.* at 592.

The authority of an individual having power of attorney to sign arbitration agreements on behalf of another with nursing care facilities has been heavily litigated. *E.g. Preferred Care of Del., Inc. v. Crocker*, 2016 WL 1181786 (W.D. Ky. Mar. 25, 2016); *Extendicare Homes, Inc. v.*

*Whisman*, 478 S.W.3d 306 (Ky. 2016); *Ping*, 376 S.W.3d 581. Despite any disagreements that emerge from these cases, they all deliver a clear mandate for courts to closely examine the terms of such documents granting power of attorney, as the validity of an arbitration agreement hinges on whether the agent had the proper authority to enter into the agreement. For example, the Supreme Court of Kentucky in *Ping* found that an agent whose power of attorney was limited only to the management and disposition of property and health care decisions did not have the authority to enter into an arbitration agreement with the principal's nursing home on the principal's behalf, stating that, "[a]bsent authorization in the power of attorney to settle claims and disputes or some such express authorization addressing dispute resolution, authority to make such a waiver is not to be inferred lightly." *Id.* at 593.

Thus, the Court cannot determine whether Trish Turpin had the requisite authority to enter into an arbitration agreement on behalf of Liona without evidence of what authority the power of attorney granted to Trish. Heartland Villa has offered evidence as to Liona granting power of attorney to Trish, presenting the arbitration agreement as signed by Trish "as power of attorney, legal guardian or agent authorized to bind Patient to this Agreement." [DN 8-2, at 4]. It has further provided an admissions agreement signed by Trish as "Financial POA" [DN 16-1], a representative designation signed by Trish stating she obtained power of attorney from Liona on January 25, 2014 [DN 16-2], an authorization for beauty shop services for Liona signed by Trish as power of attorney [DN 16-3], and a health care decision making form that not only indicates that Trish has "Financial POA" from Liona but also contains Heartland Villa's confirmation that it has obtained this document [DN 16-4]. However, even if Liona did grant a power of attorney to Trish, the scope of the specific authority Liona may have granted and whether that authority was sufficient for Trish to enter into the arbitration agreement is unknown.

Therefore, the Court will allow limited discovery on the issue of whether a power of attorney existed and if so, the scope of authority granted in the power of attorney. After the conclusion of that discovery, a new motion to compel arbitration will be considered.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant Heartland Villa to compel arbitration and enjoin Defendant Pamela Sue Hamilton is **DENIED.** The motion by Heartland Villa for limited discovery is **GRANTED**, and the parties may engage in discovery consistent with this opinion for a period of time **ending January 7, 2017.**

*Joseph H. McKinley, Jr.* (signature)

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 7, 2016

cc: counsel of record